Eduardo ORTIZ, Petitioner,

v.

Ramon RODRIGUEZ, Chairman of the New York State Board of Parole, Respondent.

Jose Flores RODRIGUEZ, Petitioner,

v.

Charles SCULLY, Superintendent of Green Haven Correctional Facility, Respondent.

Nos. 84 Civ. 6035(JFK), 84 Civ. 3765(JFK).

United States District Court, S.D. New York.

July 2, 1985.

David Samel, William E. Hellerstein, New York City, for petitioner Rodriguez.

David P. Greenberg, William E. Hellerstein, New York City, for petitioner Ortiz.

Robert Abrams, Atty. Gen., New York City, for respondents; Vida M. Alvy, Asst. Atty. Gen., of counsel.

KEENAN, District Judge:

Before the Court are two separate petitions for writs of habeas corpus brought by two New York State prisoners, Eduardo Ortiz and Jose Flores Rodriguez, against the Wardens of the prisons in which the petitioners are respectively incarcerated. The petitioners are both serving sentences on robbery convictions. Both Ortiz and Rodriguez ("the Petitioners") base their arguments in support of their petitions on the alleged unconstitutionality of New York state's affirmative defense of duress, as set forth in Section 40.00 of the New York Penal Law. ("§ 40.00".) Petitioners assert that § 40.00 in effect shifts the burden of proof on a criminal charge to a defendant, by requiring the defendant to negate the intent element of robbery. Petitioners contend that such burden-shifting is unconstitutional because it removes intent from the elements of a criminal charge to be proved by the prosecutor beyond a reasonable doubt. Thus, the Court must determine whether under New York law the duress defense negates intent. According to Petitioners, if duress precludes intent, then the requirement that a defendant establish that he committed a crime while acting under duress necessarily entails a showing by a defendant of the lack of intent. Since intent is an element of the crime, the burden of proof on duress cannot, Petitioners claim, constitutionally be placed on a defendant.

However, if the Court determines that a party acting under duress can nevertheless have the requisite intent for the crime of robbery, then the New York statutory scheme is constitutional. This Court finds that the New York defense of duress does not negate the intent aspect of robbery.

The New York statute which places on a defendant the burden of establishing duress does not unconstitutionally require a defendant to disprove an element of the crime charged. Accordingly, the petitions for writs of habeas corpus are denied.

## I. FACTS

### (A) Petitioner Ortiz

Ortiz was indicted in New York County and charged with two counts of robbery in the first degree and two counts of robbery in the second degree. All of the charges stemmed from a September 1980 incident at "Pants & Things," a retail clothing store located at 201 West 28th Street. At trial, the evidence showed that the store was held up by two men armed with guns. Petitioner Ortiz entered the store after the gunmen. He tied up the store's manager and its co-owner. After the two gunmen took money from the store's personnel, they left the store. Petitioner Ortiz left the store as well. After a chase by the police, Ortiz was arrested. The two gunmen were not apprehended.

Ortiz testified at trial that he was threatened by the two gunmen, and assisted them only under duress. Defense counsel argued at bench conferences that § 40.00, requiring the defense to prove duress by a preponderance of the evidence, unconstitutionally shifted the burden of proof on intent to the defendant. Defense counsel opposed giving a jury instruction on duress for this reason. Counsel instead proposed a charge placing the burden of proving intent on the prosecution. The prosecution, in turn, argued that Ortiz' coercion evidence fell directly within the statutory definition of duress, and that a jury charge on duress was therefore appropriate. The prosecutor requested a charge instructing the jury that evidence of coercion or duress did not negate evidence of intent, an element of the crime charged.

The trial court agreed to refrain from submitting a duress instruction to the jury, on the condition that defense counsel avoid using the duress argument in summation.

Defense counsel complied with this condition. In summation, defense counsel urged Ortiz' lack of intent as indicated by a variety of circumstantial factors. The prosecutor's summation also focused on whether Ortiz had formulated the necessary intent, mentioning, over defense counsel's objection, that "it is a defense that [Ortiz] acted because of threats." (Transcript at 413). The court's charge emphasized intent, and omitted reference to the legal status or probative value of Ortiz' duress evidence. The court did not address the issue of the burden of proof with respect to such evidence. Thus, Ortiz did not present the duress argument in the course of his trial, nor was the jury charged on this issue.

The jury found Ortiz guilty on all counts. The court sentenced Ortiz to a 2 to 6 year prison term for each of the first degree robbery counts, and a 1½ to 4 year prison term for each of the second degree robbery counts. All sentences were to run concurrently.

On December 6, 1983, the Appellate Division, First Department, affirmed the conviction without opinion, 98 A.D.2d 997, 470 N.Y.S.2d 264, and on January 30, 1984 the New York Court of Appeals denied application for leave to appeal, 61 N.Y.2d 765, 472 N.Y.S.2d 1046, 460 N.E.2d 1368. Ortiz petitioned this Court for a writ of habeas corpus on August 16, 1984.

### (B) Petitioner Rodriguez

Petitioner Rodriguez was charged in New York County with six counts of first degree robbery resulting from a May 15, 1980 incident at a jewelry office on the ninth floor of 10 West 47th Street. There were two participants in the hold-up, one of whom carried a shotgun. The evidence at trial showed that the second, unarmed man involved in the hold-up was recognized as Rodriguez, on the basis of his previous visits to the jewelry office. Rodriguez entered the premises with the gunman. He then handcuffed the five jewelry office workers to a jewelry polishing machine, using handcuffs produced from a bag he was carrying. Rodriguez filled the empty bag with jewelry while the gunman kept the victims at bay. Two other people entered the office during the course of the robbery, and were also handcuffed by Rodriguez. The two robbers took money and personal jewelry from them. Before leaving the office, Rodriguez severed the telephone wires.

At trial, defendant admitted taking part in the robbery, but interposed the defense of duress. He asserted that his acts were compelled by the previously unknown gunman, who had accosted him just outside the office, warned him not to be foolish, robbed him and threatened his family. Rodriguez stated that he had not seen the gunman before or since the robbery.

In its charge, the trial court instructed the jury that the prosecution had the burden of proving beyond a reasonable doubt each element of robbery. The court explained to the jury that the defendant admitted being at the scene of the robbery, but that he "affirmatively denie[d] being an intentional participant." (Transcript at 285). The court further told the jury that petitioner had the burden of proving, by a preponderance of the evidence, that he acted under duress. No objections were made to the Court's charge.

In the course of its deliberations, which lasted most of a day, the jury passed three notes to the judge which expressed some confusion as to where the burden of proof rested on the question of duress, and as to the relationship between intent and coercion. A third note was submitted with a "protest" on the part of one juror who felt that the law charged on duress was "confusing." (Transcript at 306–307). The judge reinstructed the jury regarding the burden on duress. The jury shortly thereafter returned a guilty verdict on all six counts of first degree robbery submitted to them.

On August 3, 1982, Rodriguez was sentenced to concurrent terms of imprisonment of 8 to 16 years on each count. The Appellate Division, First Department, affirmed without opinion on October 4, 1983, 97 A.D.2d 683, 467 N.Y.S.2d 464 (1st

Dept.). On December 9, 1983, Rodriguez' application for leave to appeal to the Court of Appeals was denied, 61 N.Y.2d 677, 472 N.Y.S.2d 1038, 460 N.E.2d 241.

## II. DISCUSSION

### (A) *Procedural Considerations*

■ Both Ortiz and Rodriguez base their petitions for writs of habeas corpus on the alleged unconstitutionality of the New York law pertaining to the affirmative defense of duress. In order to preserve a constitutional issue for federal habeas review, a petitioner must have first followed state procedures for raising the claim. *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Failure to preserve a constitutional claim through compliance with the procedures of the state courts bars a petitioner from asserting the claim under 28 U.S.C. § 2254, the federal habeas corpus statute ("§ 2254"). This rule applies to both Ortiz and Rodriguez. The Court will analyze each petitioner's case in turn.

### 1. *Ortiz*

■ At the request of Petitioner Ortiz, the trial jury which ultimately convicted Ortiz was not charged on the issue of duress. As a consequence, Ortiz could not raise and does not assert that he raised a direct objection to the constitutionality of the affirmative defense of duress in his summation. As Ortiz himself noted in his brief, defense counsel's suggestion of, and adherence to the terms of the agreement to remove the issue of duress from summations "constituted a virtual renunciation of the duress defense." (Brief for petitioner at 19). Ortiz argues that he and his attorney only agreed to this "renunciation" in order to "avoid the burden-shifting effect a charge under P.L. § 40.00 would have had on the issue of intent." Ortiz asserts that the election to enter into the agreement was a "direct, forced response" to the "unconstitutional duress statute."

The Court does not find that the choice to decline the use of the duress defense was "forced." Rather, it finds that the defendant, Ortiz, made a voluntary, strategic decision not to employ the affirmative defense at trial. More to the point in the case at bar, however, is the finding that while the affirmative defense was not, in the end, employed by the defense, objections to its constitutionality were raised at the trial, and on direct appeal to the Appellate Division, First Department. (Transcript at 263–265, 347–369). While the trial court declined to rule that § 40.00 was unconstitutional, the objection served to fulfill the requirement of N.Y.Crim.Proc.L. § 470.05(2) (McKinney 1971), which reads:

> For purposes of appeal, a question of law with respect to a ruling or instruction of a riminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same.

Ortiz provided the trial judge an opportunity to consider and cure the alleged error in the statute, and by his contemporaneous objection, preserved the issue for direct appeal. Therefore, despite the absence in the charge and summation of reference to the affirmative defense, Ortiz followed the procedures of New York state for raising a constitutional objection, and preserved the constitutional claim for review by the federal courts on this petition for habeas corpus relief.

### 2. *Rodriguez*

#### a. *Preservation of the Constitutional Claim.*

■ The trial court which presided over Rodriguez' trial charged the jury on the issue of intent as it related to the affirmative defense of duress, basing the charge on the relevant New York statute. Rodriguez claims in his petition for habeas corpus relief that regardless of his conceded failure to raise an objection to the unconstitutionality of the duress statute at the tri-

al, no procedural default exists and this Court may consider the issue despite the rule of *Sykes* and *Engle*. The Court agrees with this position.

The New York state law on contemporaneous objections appears at N.Y.Crim. Proc.L. § 470.05(2), *supra* p. 23. The New York Court of Appeals has carved out an exception to this rule requiring contemporaneous objection. In *People v. McLucas,* 15 N.Y.2d 167, 256 N.Y.S.2d 799, 204 N.E.2d 846 (1965) the New York Court of Appeals allowed an appeal based on a constitutional claim of defendant's privilege against self-incrimination, despite defendant's failure to raise the issue at trial, on the ground that "no exception is necessary to preserve for appellate review a deprivation of a fundamental constitutional right." *McLucas* at 172, 256 N.Y.S.2d 799, 204 N.E.2d 846. The Court of Appeals for the Second Circuit has held that the "particularized import of *McLucas*—that no objection is necessary to preserve for appellate review issues involving the use for impeachment purposes of a criminal defendant's privilege against self-incrimination—retains its validity." (citations omitted.) *Hawkins v. LeFevre,* 758 F.2d 866, 873 (2d Cir.1985).

This Court has no desire to expand the *McLucas* exception, especially since the Second Circuit has ruled that the case is "particularized." An overly broad reading of *McLucas* would have the undesirable consequence of allowing the appellate courts of New York, or the federal courts on habeas petitions, to chip away at the rule adopted by the New York legislature. This Court nevertheless determines that the constitutional claim raised by petitioner Rodriguez falls within the pre-existing narrow exception created by *McLucas,* and by the later limiting case of *People v. Patterson,* 39 N.Y.2d 288, 383 N.Y.S.2d 573, 347 N.E.2d 898 (1976), *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977).

In *People v. Patterson,* the defendant raised for the first time on appeal his contention that the burden of proof on the issue of extreme emotional disturbance, set forth in § 125.25 (subd. 1, ¶ [a] ) of the New York Penal Law, unconstitutionally placed the burden of proof upon defendant. The New York Court of Appeals ruled in *Patterson* that though the issue had not been raised at trial:

> [t]here is one very narrow exception to the requirement of a timely objection.... [W]here the court had no jurisdiction, or where the right to trial by jury was disregarded, or where there was a fundamental nonwaivable defect in the mode of procedure, then an appellate court must reverse, even though the question was not formally raised below.

*Patterson,* 39 N.Y.2d at 295, 383 N.Y.S.2d 573, 347 N.E.2d 898. (citations omitted). The Court expressly stated that:

> [i]f the burden of proof was improperly placed upon the defendant, defendant was deprived of a properly conducted trial, the distribution of the burden of persuasion being just as significant as the proper composition of the jury. Since the error complained of goes to the essential validity of the proceedings conducted below, we believe there is a question of law that our court should review.

*Patterson* at 296, 383 N.Y.S.2d 573, 347 N.E.2d 898.

Without unduly expanding the *McLucas* formulation, this Court may fairly conclude that the challenge which Petitioner Rodriguez raised before the Appellate Division, in form and import similar to the *Patterson* challenge, was properly raised before the Appellate Division, and the issue preserved for review.

b. *The Silent Affirmance by the Appellate Division.*

■ Having determined that Rodriguez' constitutional claim was preserved by virtue of the *McLucas* exception to N.Y.Crim. Proc.L. § 470.05(2), the issue before the Court is "how to interpret the silence" of the Appellate Division in its affirmance. Until recently, the controlling case in this Circuit for interpreting the silent affirmance of a state appellate court was *Mar-*

*tinez v. Harris,* 675 F.2d 51 (2d Cir.1982), *cert. denied,* 459 U.S. 849, 103 S.Ct. 109, 74 L.Ed.2d 521 (1982). *Martinez* stands for the proposition that when the prosecutor argues for affirmance in the state appellate court both on the merits of the conviction and on grounds of procedural default for failure to raise a constitutional claim at trial, a federal court should presume that the affirmance rested on the adequate and independent state ground of the procedural default.[1] In doing so, the federal court forecloses its opportunity to review the habeas claim on the merits. *Wainwright v. Sykes, supra.*

This presumption has been cut back by *Hawkins v. LeFevre, supra.* In *Hawkins,* the Second Circuit chose to interpret a silent affirmance according to the "most plausible reading." The circuit court stated, in the context of a habeas petition based on an alleged infringement of the privilege against self-incrimination:

> Indeed, the most plausible reading of the silent affirmance is that the Appellate Division, presumably aware of *McLucas* and its progeny, did not even pause to consider procedural default but simply affirmed Hawkins's conviction on the merits. We choose not to extend *Martinez* and presume reliance by a state court on a procedural default, where it

appears unlikely that the court rested its affirmance on that ground.

*Hawkins,* 758 F.2d at 874. Applying this "most plausible reading" analysis to the instant case, the Court concludes that the Appellate Division, no doubt aware of the New York Court of Appeals' opinion in *McLucas* and that of the United States Supreme Court in *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), was likely to have affirmed Rodriguez' conviction on the merits, and not on the procedural default ground. Accordingly, this Court will proceed to review the merits of Rodriguez' petition for habeas corpus relief.[2] *Wainwright v. Sykes, supra,* 433 U.S. at 86–87, 97 S.Ct. at 2509.

### (B) *The Constitutionality of Penal Law Section 40.00*

■ Petitioners assert that a defendant acting under duress cannot form the requisite intent to rob. In placing the burden of proving duress on the defendant, petitioners argue, the defendant is effectively charged with the burden of establishing lack of intent. Thus, they contend, the prosecution is relieved of the requirement of proving an element of the crime of robbery, and the defendant is unconstitutionally burdened.

1. Petitioner Rodriguez argues that the prosecutor's brief to the Appellate Division did not contend that there has been a procedural default, and that the constitutional issue had not been preserved for review. The respondent claims that the procedural default issue was raised on page 16 of its Appellate Division brief. Petitioner replies that the procedural default claim at page 16 is addressed to two points made by defendant before the Appellate Division that have been expressly abandoned in the instant habeas petition. If the prosecutor did not brief the procedural issue before the Appellate Division, the federal claim is open for consideration on this petition for habeas corpus on a theory of implied waiver.

The Court determines that the respondent effectively presented at page 16 of its appellate brief the argument that Rodriguez had failed to preserve the constitutional issue for review. One issue expressly addressed at page 16 was that the defendant had failed to object to the trial court's charge on intent. Since the trial court's charge on intent was based directly on

the language of the challenged statute itself, the respondent's argument that Rodriguez had defaulted in attacking the charge is indistinguishable from an argument asserting that Rodriguez had failed to object to the statute itself. Thus, the respondent did, at page 16 of its appellate brief, raise the procedural default issue as one possible basis for affirmance of the conviction by the Appellate Division.

2. The Court recognizes that the *Martinez* presumption retains vitality after *Hawkins. Stepney v. Lopes,* 760 F.2d 40 (2d Cir.1985). However, due to the "fundamental" nature of the alleged error in § 40.00, *see Patterson,* 39 N.Y.2d at 295, 383 N.Y.S.2d 573, 347 N.E.2d 898, the "state court's unexplained rejection of [the] claim [is] not deemed a reliance on procedural default." *Stepney,* 760 F.2d at 44. The instant case is controlled by *Hawkins* as a consequence of the potentially "fundamental defectiveness" of Rodriguez' trial. *Patterson* at 295, 383 N.Y. S.2d 573, 347 N.E.2d 898.

In support of this position, petitioners cite *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) and *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). In *Mullaney*, a unanimous Supreme Court struck down a Maine statute requiring a defendant to prove "heat of passion" in order to reduce a homicide charge from murder to manslaughter. In *Patterson*, a divided Court upheld a New York law placing on a defendant the burden of proving the existence of the affirmative defense "of extreme emotional disturbance," to reduce a homicide charge from murder to manslaughter. Petitioners claim, and it is settled law, that the different results of *Patterson* and *Mullaney* can be explained by an analysis of the differing statutory schemes implicated in each case. In *Mullaney*, the Court found that "heat of passion" was mutually incompatible with "malice aforethought" as defined by the Maine statute. In contrast, *Patterson* held that a state need not prove beyond a reasonable doubt every fact, "the existence or non-existence of which it is willing to recognize as an exculpatory or mitigating circumstance affecting the degree of culpability or the severity of the punishment." *Patterson*, 39 N.Y.2d at 207, 383 N.Y.S.2d 573, 347 N.E.2d 898.

In *Patterson*, the Supreme Court found, in contrast to the statutory scheme struck down in *Mullaney*, that the interposed defense of "extreme emotional disturbance" bore no direct relationship to an element of murder under New York law. In other words, the Court found that the presence of "extreme emotional disturbance" did not negate malice or intent. Once the state met its burden of proving the elements of the crime, the defendant could reduce or mitigate the conviction to manslaughter by proving, by a preponderance of the evidence, that he acted under the influence of "extreme emotional disturbance."

The focus of the inquiry on these two habeas petitions before the Court must, therefore, be whether under New York law, duress negates intent, after the fashion of the Maine statute in *Mullaney*, or

whether, as in *Patterson*, intent may co-exist with duress, making duress merely an "exculpatory or mitigating circumstance."

For the reasons set forth below, this Court finds that under the New York Statute, duress does not preclude intent, and therefore the *Patterson* analysis requires a finding that § 40.00 is constitutional.

Other courts have upheld similar statutes. The United States Supreme Court has repeatedly sustained the constitutionality of the affirmative defense of insanity. In *Leland v. Oregon*, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed.2d 1302 (1952) the Court held that since "the burden of proof of guilt, and of all the necessary elements of guilt, was placed squarely upon the State," it was acceptable under the due process clause to place the burden of proving insanity on the defendant. *Leland* at 795–796, 72 S.Ct. at 1005–1006. *See Rivera v. Delaware*, 429 U.S. 877, 97 S.Ct. 226, 50 L.Ed. 2d 160 (1976).

The United States Court of Appeals for the Second Circuit has written on the duress defense as it applies in federal prosecutions, where no affirmative defense exists. In both cases, *United States v. Calfon*, 607 F.2d 29 (2d Cir.1979) (per curiam), *cert. denied*, 444 U.S. 1085, 100 S.Ct. 1044, 62 L.Ed.2d 771 (1980) and *United States v. Mitchell*, 725 F.2d 832 (2d Cir.1983), the Second Circuit found, in dictum, that challenges to the duress defense did not rise to the level of constitutional dimension.

In *Mitchell*, the Second Circuit reviewed a petitioner's claim that jury instructions which obliged the prosecution only to disprove the duress defense by a preponderance of the evidence were erroneous. Mitchell, a defendant in the Southern District of New York, argued that the intent to commit the charged crime of armed bank robbery was inconsistent with duress, and that therefore, the prosecutor must disprove duress, in order to prove intent, and must provide evidence sufficient to meet the standard of "beyond a reasonable doubt," under the due process clause. While the Second Circuit found that for

practical reasons, the government's burden in "disproving at least one element of duress should be proof beyond a reasonable doubt," it explicitly declined to construe any constitutional mandate on the duress defense. Noting that it would

do well to bear in mind the Supreme Court's observation that "[t]he doctrines of *actus reus, mens rea,* insanity, mistake, justification, and duress have historically provided the tools for a constantly shifting adjustment of the tension between the evolving aims of the criminal law and changing religions, moral, philosophical, and medical views of the nature of man," *Powell v. Texas,* 392 U.S. 514, 536, 88 S.Ct. 2145, 2156, 20 L.Ed.2d 1254 (1968),

the Second Circuit refused to "constitutionaliz[e] any particular formula for disproving the defense of duress." *Mitchell* at 835.

In *Calfon,* the Court held that a jury instruction which placed the burden of proof of duress on a defendant was erroneous because it departed from the federal practice of requiring the prosecution to prove absence of duress, once the issue of duress was raised by a defendant. However, the court found that there was no constitutional mandate that the prosecution prove duress, only a practice developed through federal case law. Relying on *Patterson,* the court further stated that, "[t]he controlling factor appears to be what facts the *legislature* chose to include as elements of an offense." (emphasis in original). The intent requirement in the statute at issue, 21 U.S.C. 841(a)(1), was simply the intent to manufacture, distribute or dispense a controlled substance. In the Second Circuit's view, this intent was not negated by duress. *Calfon* at 30.

The New York Court of Appeals, too, has upheld various affirmative defenses, though it has not expressly passed on the defense of duress. In *People v. Patterson,* 39 N.Y.2d 288, 383 N.Y.S.2d 573, 347 N.E.2d 898 (1974) the New York Court of Appeals upheld the defense of "extreme emotional disturbance" because it did not negate the intent element of the murder statute. *Patterson,* 39 N.Y.2d at 302, 383 N.Y.S.2d 573, 347 N.E.2d 898. In *People v. Laietta,* 30 N.Y.2d 68, 330 N.Y.S.2d 351, 281 N.E.2d 157 (1976), the Court of Appeals determined that since "entrapment is not a defense which negatives an essential element of the crime, but rather constitutes a defense in the nature of confession and avoidance," the burden of proving the affirmative defense of entrapment under § 40.05 of the New York Penal Law was properly placed on the defendant.

This Court deems duress, like entrapment, to be a defense in the nature of confession and avoidance which does not negative any essential elements of the crime charged. The New York Court of Appeals reached the same conclusion in *People v. Calvano,* 30 N.Y.2d 199, 204, 331 N.Y.S.2d 430, 282 N.E.2d 322 (1972).

Under these analyses, the intent component of the crime of robbery under New York law is not negated by duress.

Section 40.00 of the New York Penal Law defines duress as requiring a showing that the defendant "engaged in the proscribed conduct because he was coerced to do so by the use or threatened imminent use of unlawful physical force a person of reasonable firmness in his situation would have been unable to resist." The robbery statute, New York Penal Law § 160.00, defines robbery as forcible stealing, "when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of:

(1) preventing or overcoming resistance . . .

(2) compelling the owner . . . or another . . . to deliver up the property. . . ."

Thus, robbery under § 160.00 incorporates larceny, which under New York Penal Law § 155.05(1) is defined as existing when a defendant:

with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property. . . .

Petitioners assert that this larcenous intent, incorporated by reference into § 160.00, is absent when a party commits a robbery under duress. This argument is identical to that rejected by the Second Circuit in *Calfon*. There too, intent was confused with the collateral issue of motive or desire. The intent necessary to a showing of larceny, which "the *legislature* chose to include as an element," *Calfon* at 30, is merely the intent to appropriate the property of another. When a robbery is committed under duress, the actor's conscious objective is still to appropriate the property of another. When a party has this objective to appropriate, and does in fact appropriate, the elements of larceny are established. When he threatens or uses force, in addition, all the components of the crime of robbery are present.

Section 40.00 does not provide that any of these elements need not be proven by the prosecution. Rather, it creates an excuse. If, after the prosecution has proven all the elements of the crime, the defendant can establish this excuse, he will not be held criminally liable for his act, even though the act was, of itself, criminal.[3]

### CONCLUSION

Duress does not negate the intent element of the crime of robbery. Therefore, this Court concludes that the New York statutory scheme which places the burden of proving duress on the defendant comports with due process requirements.

Petitioners having failed to establish the unconstitutionality of the affirmative defense of duress, the petitions for writs of habeas corpus are denied.

Since the present petition is not frivolous and presents questions of substance for appellate review, a certificate of probable cause to appeal will issue. *Alexander v. Harris*, 595 F.2d 87, 90–91 (2d Cir.1979).

**3.** *See Thomas v. Arn,* 704 F.2d 865, 874 (6th Cir.1983), which stated, "if a mitigating or exculpatory defense is considered after the elements of the offense are established beyond a reasonable doubt, *Patterson* suggest[s] that the burden of proving this defense may be placed on de-

Furthermore, the Court certifies that any appeal from this order in forma pauperis would be taken in good faith because an appeal would not be frivolous. 28 U.S.C. § 1915(a); *Coppedge v. United States*, 369 U.S. 438, 445, 82 S.Ct. 917, 920, 8 L.Ed.2d 21 (1962).

SO ORDERED.

fendant." *See also United States v. Bailey,* 444 U.S. 394, 426, 100 S.Ct. 624, 642, 62 L.Ed.2d 575 (1980) (duress and coercion "traditionally have been treated as ... affirmative defense[s], with the burden of proof on the defendant.") (Blackmun, J., dissenting).